IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| JUDITH HEENAN, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
|     v. | ) | 2:09cv75-MHT |
| | ) | (WO) |
| MARILYN RHODES, | ) | |
| DEBBIE GAGNON, | ) | |
| CICELY BAUGH-HOOTEN, | ) | |
| CAM HAMILTON, | ) | |
| JUD MCCARTHA, | ) | |
| JUANITA LANDERS, | ) | |
| RAMONA LAZENBY, | ) | |
| and ANITA ALL, | ) | |
| | ) | |
|     Defendants. | ) | |

OPINION AND ORDER

In this lawsuit, plaintiff Judith Heenan challenged her dismissal as a student from the School of Nursing at Auburn University at Montgomery (AUM) in Montgomery, Alabama. According to the AUM School of Nursing, Heenan was dismissed "for failing to complete classroom tasks adequately, for performing poorly in clinical evaluations, and for exhibiting unprofessional behavior

in a professional environment." Heenan v. Rhodes, ____ F.Supp.2d ____, ____, 2010 WL 5300929 at *9 (M.D. Ala. 2010) (Thompson, J.).  This lawsuit is again before the court, this time on Heenan's motion to alter or amend the judgment, which was summarily entered against her on December 27, 2010, based on the defense of qualified immunity.  Id. at ____, 2010 WL 5300929 at *13.  The motion will be denied.

A.

With her motion, Heenan contends, in essence, that her affidavit alone, in which she takes issue with how her former instructors and administrators assessed her nursing-school performance, creates a disputed issue of fact precluding entry of summary judgment against her based on the qualified-immunity defense.  Even with the assumption that Heenan's grievances against the AUM Nursing School's grading system were constitutionally protected speech, the evidence is still overwhelming that

2

she was dismissed for proper reasons totally unrelated to her speech.

First, Heenan's contention is based on the flawed premise that her overall assessment, in her affidavit, of her own nursing-school performance as satisfactory is entitled to the same weight as her instructors' and administrators' assessments of her performance as unsatisfactory.  However, Heenan has not put herself forward as having any training and experience whatsoever in nursing instruction and thus as having competent knowledge on how to run a nursing school, including how to assess, grade, and discipline nursing students.  She has no degree in nursing, let alone any expertise in nursing school administration and teaching.  She is simply not a competent witness on such matters in general; or, to put it another way, while she may have her own views regarding some underlying facts here and there, she is not competent to critique her own overall performance as a nursing student.  Nor has she, in

opposition to summary judgment, offered any testimony or evidence from someone who has training and experience as a nursing instructor or administrator and who would be willing to testify that the AUM Nursing School's overall assessment of her performance was unfounded. Aside from the fact that Heenan's views are completely self-serving, she has provided no competent evidence to take issue with the evidence presented to the contrary.

Moreover, even if Heenan could be viewed as having some modicum of expertise on how the AUM Nursing School should have assessed and graded her, the evidence against her is still overwhelming. The record reflects that, "Prior to receiving the fourth point that led to her expulsion, Heenan acquired three other points from three separate instructors, all for different reasons, but all related to her performance in the classroom, and all of which were reviewed and affirmed by the instructors' supervisors." Heenan, ____ F.Supp.2d at ____, 2010 WL 5300929 at *9. No reasonable factfinder could conclude

4

that Heenan's assessment of her own performance outweighs that of so many trained and experienced nursing-school instructors and administrators. See Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'") (citation omitted).

### B.

While the court has concluded that, even if Heenan's speech were constitutionally protected, summary judgment was still properly entered against her, the court will also address her contention that it erred in holding that her speech was not constitutionally protected. Because the court failed to follow through with an important distinction, Heenan is partially correct.

To be sure, educators do not offend the First Amendment by imposing penalties for "student speech in

school-sponsored expressive activities so long as their actions are reasonably related to legitimate pedagogical concerns." Hazelwood School Dist. v. Kuhlmeier, 484 U.S. 260, 273 (1988). In applying this principle, the court failed to draw a distinction between Heenan's grievances that were expressed in nurse-training related circumstances and those that were not. The former would include grievances that were made to, or in the presence of, her instructors and supervisors and were related to her training. See, e.g., Heenan, ____ F.Supp.2d at ____, 2010 WL 5300929 at *3 ("Following the thermometer incident, [Instructor] Rhodes admitted to Heenan that she was undecided as to whether a point was appropriate; Heenan replied, '[P]oints are stupid. Go ahead.' ... Rhodes allocated the point.") (citation omitted). Because adverse action taken for this speech would be "reasonably related to legitimate pedagogical concerns," Hazelwood, 484 U.S. at 273, the speech would not be protected. As this court has stated: "[O]ne of the

6

traits of a good teacher is the ability to get a student, finally, to stop blaming others (including her teacher) for the bad grade she has received.  How teachers grade, and, in particular, how they treat those students who attempt to use gripes about grades and the grading systems as excuses for poor performance, is one of those pedagogical concerns that are at the heart of the teaching profession."  Heenan, ____ F.Supp.2d at ____, 2010 WL 5300929 *10.

The latter type of grievances would include those expressed in circumstances that were not part of her training with her instructors and supervisors.  See, e.g., Heenan, ____ F.Supp.2d at ____, 2010 WL 5300929 at *4 ("Throughout her academic career at AUM, Heenan vocally opposed the school point system as an arbitrary and subjective method of discipline.  She routinely 'discussed the point system with other nursing students and with friends and with students at AUM who were not nursing students.'  Heenan Dep. at 40 (Doc. No. 46-1).

7

These discussions took place at 'various locations in the school,' including the lab, where clinical validations took place, in the student break room, the bathroom, the hallway, the elevator, and in front of the school mailboxes. Id. at 47-48.") (footnote omitted). Because punitive action against her for her speech in these circumstances would not be "reasonably related to legitimate pedagogical concerns," Hazelwood, 484 U.S. at 273, her speech would arguably be protected. However, the evidence is beyond reasonable dispute that Heenan was dismissed not for this speech but rather "for failing to complete classroom tasks adequately, for performing poorly in clinical evaluations, and for exhibiting unprofessional behavior in a professional environment." Heenan, ____ F.Supp.2d at ____, 2010 WL 5300929 at *9.

The court is, and was, not confronted with a case in which the record is void of any pedagogical basis to support an educator's adverse action against a student in the wake of that student's speech outside or inside

class, or even a case in which the record presents competent evidence on both sides as to whether the educator's action was pedagogically reasonable. The merit, if any, in such cases is left for another day. In contrast, the record this court confronted clearly warranted, for the reasons given above, the entry of summary judgment against Heenan pursuant to Rule 56 of the Federal Rules of Civil Procedure based on the qualified-immunity defense. To hold otherwise would mean that any public university or school student, armed with only a personal affidavit challenging her grades, could obtain court review of those grades, with the result that, across the country, courts would then be, impermissibly, in the business of routinely reviewing school grades. See Hazelwood, 484 U.S. at 273 ("the education of the Nation's youth is primarily the responsibility of parents, teachers, and state and local school officials, and not of federal judges").

**\*\*\***

Accordingly, it is ORDERED that plaintiff Judith Heenan's motion to alter or amend judgment (Doc. No. 86) is denied.

DONE, this the 26th day of January, 2011.

                        /s/ Myron H. Thompson  
                        **UNITED STATES DISTRICT JUDGE**